IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALLSTATE INSURANCE COMPANY | : | |
|---|---|---|
| a/s/o LARRY AND VIRGINIA WINGARD | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO. 17-cv-1530 |
| OMEGAFLEX, INC. | : | |
| And | : | |
| TITEFLEX CORPORATION t/a | : | |
| GASTITE DIVISION, | : | |
| and | : | |
| UGI CORPORATION | : | |
| Defendants. | : | |

# **M E M O R A N D U M**

**STENGEL, C.J.**                                                                                          February 15, 2018

This is a subrogation case brought by Allstate Insurance Company as subrogee of Larry and Virginia Wingard for property damage to the premises located at 3115 Elizabeth Lane, Macungie, Pennsylvania. Allstate alleges that as a result of a fire caused by the defendants, the plaintiffs suffered damage to their real and personal property in the amount of $268,304.61. Plaintiffs allege that defendants, Omegaflex Inc. and Titeflex Corporation are liable under the theories of strict liability and negligence. Plaintiffs also allege breach of contract and breach of implied warranty against UGI Corporation. Defendant Titeflex moves to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 28.) Plaintiffs opposed the motion. (Doc. No. 33.)

1

## I. Background[1]

In 2002, the plaintiffs hired Joseph Barness to build the subject property located at 3115 Elizabeth Lane, Macungie, Pennsylvania.[2] In the original construction and subsequent renovation of the basement, two different kinds of Corrugated Stainless Steel Tubing ("CSST") were installed by various contractors and subcontractors.[3] CSST is used for the transportation and delivery of fuel gas in residential and commercial buildings.[4] Defendant, Titeflex makes and distributes Gastite brand CSST, and Omegaflex makes and distributes a separate CSST product under the brand name CounterStrike.[5] Neither run of CSST, which were separate but interconnected, was directly bonded or grounded.[6] Omegaflex and Titeflex did not require direct bonding or grounding at the time of the installation.[7] The failure to bond/ground either run of the CSST created a dangerous condition.[8]

In July of 2016, UGI was called to the property to inspect a gas leak.[9] UGI failed to properly inspect or examine the CSST prior to restoring gas service to the property and failed to correct the dangerous condition.[10]

---

[1] The Factual allegations in this section are taken from the second amended complaint, unless otherwise noted. (See Sec. Am. Compl.)
[2] Id. at ¶13.
[3] Id. at ¶14.
[4] Doc. No. 28 at 5.
[5] Id.
[6] Sec. Am. Compl. at ¶15.
[7] Id.
[8] Id.
[9] Id. at ¶16.
[10] Id. at ¶17.

On August 13, 2016 the CSST became energized by a lightning strike.[11] Because neither run of the CSST was properly bonded/grounded, the difference in electrical potential between conductive systems in the house caused the energy from the lightning strike to arc, which created a hole in the Omegaflex CSST.[12] The gas that escaped from the perforated Omegaflex CSST ignited, and a fire spread to the surrounding material and damaged the plaintiffs' real and personal property.[13]

At all times relevant, Mr. and Mrs. Wingard maintained an insurance policy with Allstate.[14] Allstate made certain payments under the terms of the policy.[15] As a result, Allstate became subrogated to the rights of Larry and Virginia Wingard.[16]

**II.     Procedural History**

On April 5, 2017 plaintiffs filed an initial complaint,[17] and on May 5, 2017 plaintiffs filed an amended complaint.[18] Plaintiffs then moved for leave to file a second amended complaint,[19] which I granted by Order dated July 7, 2017.[20] On July 21, 2017, Titeflex filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).[21] Plaintiffs filed a response in opposition on August 4, 2017.[22] On January 24, 2018,

---

[11] Id. at ¶18.
[12] Id. at 19.
[13] Id. at 19.
[14] Id. at 21.
[15] Id.
[16] Id.
[17] Doc. No. 1.
[18] Doc. No. 15.
[19] Doc. No. 25.
[20] Doc. No. 26.
[21] Doc. No. 28.
[22] Doc. No.30.

plaintiffs filed an amended memorandum in support of their opposition to defendant's motion.[23]

### III. Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To sustain this challenge, the factual allegations in the complaint must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Conclusory allegations are insufficient to support a facially plausible claim; the facts asserted must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984). The court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Twombly, 550 U.S. at 563 n. 8 (2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

When presented with a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions. Iqbal, 556 U.S. at 679. Second, a district court must

---
[23] Doc. No. 33.

4

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679; see also Phillips, 515 F.3d at 232-34 (holding that: (1) factual allegations of a complaint must provide notice to the defendant; (2) the complaint must allege facts indicative of the proscribed conduct; and (3) the complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting Twombly, 550 U.S. at 555) (alterations in original)).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading need not contain detailed factual allegations, but must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Twombly, 550 U.S. at 545. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

**IV. Discussion**

Titeflex moves to dismiss plaintiffs' second amended complaint for failure to state a claim pursuant to Rule 12(b)(6). Defendant argues that plaintiffs failed to state a claim for strict liability and negligence because plaintiffs failed to plead causation. For

5

the reasons discussed below, I find that plaintiffs sufficiently pled facts demonstrating that they are entitled to relief under these theories of liability.

"Under Pennsylvania law, a plaintiff alleging a manufacturing defect based on strict liability theory must show that: (1) the product was defective; (2) the defect was a proximate cause of the plaintiff's injuries; and (3) the defect causing injury existed at the time the product left the seller's hands." Bruesewitz v. Wyeth Inc., 561 F.3d 233, 255 (3d Cir. 2009) (quoting Berkebile v. Brantly Helicopter Corp., 462 Pa. 83 (1975) (internal quotations omitted)). To plead negligence, "a plaintiff must allege that the manufacturer owed a duty to the plaintiff; that the manufacturer breached that duty; and that such breach was the proximate cause of plaintiff's injuries." Houtz v. Encore Med. Corp., No. 14-6982767, at *4 (M.D.Pa. Dec. 10, 2014).

The only issue is whether plaintiffs properly pled the element of causation. (See Doc. No. 28.) Defendant argues that the complaint fails to allege a causal link between Titeflex's product and the alleged damages because it contains only broad legal conclusions and is insufficient to state a claim. (Doc. No. 28 at 8-10.) Defendant cites to one allegation in the complaint: that the "[f]ailure to bond/ground either run of the CSST created a dangerous condition . . . [h]ad either run of CSST been bonded/grounded, the fire would not have occurred." (Doc. No. 28 at 9 (citing Sec. Am. Compl. at ¶15).) Defendant argues that the "creation of a dangerous condition is insufficient to show liability" and these allegations "amount to nothing more than a statement that had [Titeflex] CSST been properly bonded and grounded, the Wingard house would have

6

been more resistant to lightning." (Doc. No. 28 at 9.) Defendant submits that whether Titeflex could have prevented the fire does not amount to causation.

This argument isolates one allegation in the complaint and entirely omits the remaining 91 allegations. The complaint contains a short and plain statement of the facts giving rise to this claim in compliance with Rule 8:

> Since neither run of the CSST was properly bonded and grounded, the difference in electrical potential between conductive systems in the home caused the energy from the lightning strike to arc, which created a hole in the Omegaflex CSST.

(Sec. Am. Compl. at ¶ 18.) Plaintiffs also provide further factual support for these claims. (See e.g., Sec. Am. Compl. at ¶59(d) (Titeflex failed to design or manufacture Gastite CSST so that it would not fail and/or malfunction in the manner that it did)); (see also id. at ¶59(z) (Titeflex failed to test Gastite CSST's ability to withstand energy resulting from direct and/or indirect lightning strikes when bonded and grounded)); (id. at ¶67(z) (same)).

Plaintiffs do not merely recite the elements for strict liability and negligence, nor do they allege broad conclusory allegations. Accepting these well-pleaded factual allegations as true, I find that plaintiffs' complaint sufficiently alleges that Titeflex's defective product was a substantial factor in bringing about the fire and subsequent damage to plaintiffs property. At the very least, at this stage in the proceedings, plaintiffs are entitled to discovery to prove that a differential in electrical potential can cause a lightning strike to arc. Twombly, 550 U.S. at 563 n. 8. Therefore, the complaint sufficiently demonstrates plaintiffs' entitlement to relief and defendant's motion to dismiss is denied.

Titeflex also argues that the factual allegations demonstrate that Omegaflex, and not Titeflex, was the proximate cause of the fire because the lightning strike created a hole in the Omegaflex CSST, which caused gas to escape and ignite. (Doc. No. 28 at 10-11 (citing Sec. Am. Compl. ¶ 18, 19).) Defendant seems to argue that because plaintiffs affirmatively attributed the cause of the fire to Omegaflex, this somehow precludes a finding that Titeflex was also a proximate cause. This conclusion runs contrary to the well-established law that,

> an act need not be the sole cause of an injury for it to be considered a proximate cause; it need only be a substantial factor in bringing that injury about. Accordingly, an event may have more than one proximate cause.

Wider v. Townmotor Corp., 568 F. Supp. 1058, 1062-63 (E.D.Pa. 1983) (internal citations and quotations omitted). Here, the complaint alleges that both Titeflex and Omegaflex caused the fire. Regardless of which run of CSST perforated as a result of the lightning strike, plaintiffs allege that because neither run was bonded/grounded the difference in electrical potential caused the lightning strike to arc, which caused the hole in the Omegaflex CSST. (Sec. Am. Compl. ¶18.) The complaint sufficiently alleges that the damages were proximately caused by both defective products, not only Omegaflex. I find that plaintiffs properly pled that Titeflex's allegedly defective CSST was a substantial factor in bringing about the property damage. [24]

---

[24] Titeflex also argues that the complaint proves that their product was not defective because the Titeflex CSST was not perforated as a result of the lightning strike. (Doc. No. 28 at 11-12.) Defendant's repeated attempts to attribute causation solely to Omegaflex are unavailing. The issue is not merely that the Omegaflex CSST perforated. The issue is that both allegedly defective products caused/contributed to the perforation and subsequent fire. Plaintiffs are entitled to discovery to demonstrate that the failure to ground/bond the Titeflex CSST caused or contributed to the hole in the Omegaflex CSST.

## V. Conclusion

I find that plaintiffs' second amended complaint is sufficient to state a claim for relief under strict liability and negligence. Accordingly, defendant's motion to dismiss the second amended complaint is denied with prejudice.

An appropriate Order follows.